BRYAN CAVE LLP, #00145700
Robert W. Shely (No. 014261)
Gregory B. Iannelli (No. 026549)
Shayna N. Fernandez (No. 027342)
Two N. Central Avenue, Suite 2200
Phoenix, AZ  85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
rwshely@bryancave.com
gregory.iannelli@bryancave.com
shayna.fernandez@bryancave.com

QUIGLEY & WHITEHILL, P.L.C.
Daniel J. Quigley (No. 011052)
2730 East Broadway, Suite 160
Tucson, Arizona 85716-5384
(520) 326-4600 (o)
(520) 203-0202 (f)
quigley@qw-law.com

Attorneys for Defendants Aetna Life Insurance Company and
Chickering Claims Administrators Inc.

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SEAN STEVEN HILL,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>AETNA LIFE INSURANCE COMPANY and CHICKERING CLAIMS ADMINISTRATORS INC., foreign corporations,<br><br>　　　　Defendants. | No. 4:10-CV-00451-DCB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>(Hon. David C. Bury) |

　　　Plaintiff's Response misstates the legal standard governing motions to dismiss, fails to address whole sections of Defendants' argument, and seeks to gloss over the Complaint's

676188.1

failure to make allegations necessary to support a claim against Defendants. Even after being apprised of the deficiencies in his pleading, Mr. Hill does not claim that he read the documents at issue, relied upon them, or suffered any damage as a result (and, in fact, his Response makes clear that he did not). Nor has he identified one fact in support of his contention that Defendants acted in bad faith when they initially denied the claim they later paid in full.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  PLAINTIFF MISSTATES THE APPLICABLE LEGAL STANDARD.**

Hill contends that the Court should not dismiss his Complaint unless "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." [Doc. No. 8 at 4 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)] The Supreme Court disapproved that language in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). According to the Supreme Court, "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard" and has "earned its retirement." Id. at 563 (phrase has been "questioned, criticized, and explained away long enough"). A plaintiff no longer can survive a motion to dismiss by making a "wholly conclusory statement of claim" but leaving open "the possibility that [he] might later establish some set of undisclosed facts to support recovery." Id. at 561. Rather, Hill must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Complaint fails to meet this standard.

**II.  PLAINTIFF FAILS TO STATE A CLAIM.**

  **A.  The Complaint Fails To State A Claim For Consumer Fraud Or Negligent Misrepresentation.**

   **1.  The Complaint Fails to Allege any False Statements.**

The only statement in the Complaint that Hill contends is actually false or deceptive is Aetna's representation in the Policy itself that it would waive the yearly deductible for

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

certain services. [Complaint ¶ 51] But the representation is neither false nor deceptive, and is in fact true. Aetna does waive the yearly deductible for certain services according to the Policy. No allegation in the Complaint contends that Aetna failed to waive some specific deductible. Hill's allegations seem to be, instead, that: (1) Aetna agreed to waive the deductible for a self-serving purpose; and (2) "an insured may incur a potentially infinite amount of Copay charges before reaching the Out-of-Pocket Limit." [Id.] Aetna's motive, if any, cannot transform a true statement into a fraud or a deceptive statement. Nor does the Complaint suggest that Hill himself has incurred an "infinite amount of Copay charges."

Hill also contends that (1) "Aetna's administration of claims submitted under the Policy is not in compliance with the clear terms and conditions of the Policy," and that (2) Aetna has a "business practice" of delaying claim payment until a year in which the deductible has not been met. [Complaint ¶¶ 87, 44] These allegations, even if true, cannot amount to fraud because they are just claims for breach of contract. Trollope v. Koerner, 106 Ariz. 10, 19, 470 P.2d 91, 100 (1970) ("a breach of contract is not fraud"). Hill does not allege any false or deceptive statement in connection with either assertion. Further, allegation (2) is pure speculation, for which Hill fails to plead any supporting facts.[1]

Hill tacitly concedes these points by failing to address *any* of these deficiencies in his Response. Instead, he merely refers to three paragraphs of the Complaint in passing and pronounces that he has stated a claim. [Doc. No. 8 at 5–6] He is wrong. Twombly, if it stands for anything, stands for the proposition that such broad, indefinite statements will no longer support a cause of action.

The first two paragraphs that Hill addresses concern deductibles and allocation of costs between Aetna and Hill for prescription medication only.[2] Complaint paragraph 29

---

[1] In Trollope, the Arizona Supreme Court disapproved attempts to transform ordinary contract claims into frauds. "It is worth bearing in mind that charging fraud is a serious matter, and it should never be alleged routinely, as a makeweight or as a hoped-for panacea for an otherwise imperfectly perceived remedy." Trollope, 106 Ariz. at 19.

[2] The Policy provides for two types of deductibles relevant to the Complaint. The "accident and sickness" deductible is $250 per year, and applies to Hill's

says that "Section 1 of the Policy provides for a $1,000 deductible per policy year for prescriptions and covers 80% of the actual charge for the next $2,500 and 100% of the actual charge thereafter." [Complaint ¶ 29]  Similarly, paragraph 30 says that "[u]nder the terms of the Policy, Plaintiff was required to pay the first $1,000 for prescribed medication out of pocket, and Aetna was responsible for reimbursing Plaintiff for 80% of the next $1,500 in prescription costs.  Once Plaintiff reached the $2,500 level, Aetna was required to reimburse him for 100% of the costs." [Complaint ¶ 30]

But Hill does not explain why those sections allegedly contain false statements.  He does not allege that the annual deductible for medication was actually something other than $1,000, or that medication claims in excess of $1,000 were not supposed to be reimbursed at the quoted rates.  Rather, he vaguely asserts, with no specifics, that Aetna failed to abide by the Policy. [*See* Complaint ¶ 36 (asserting that Aetna "failed to timely and fully reimburse Plaintiff at the contractually required rates")]  At best, this would be a claim for breach of contract, not fraud.  Trollope, 106 Ariz. at 19.

To establish fraud, Hill would have to allege facts showing, among other things, that Aetna made the promises in paragraphs 29 and 30 of the Complaint without any intent to perform them.  Spudnuts Inc. v. Lane, 131 Ariz. 424, 426, 641 P.2d 912, 914 (Ct. App. 1982) ("actionable fraud cannot be predicated on unfulfilled promises, expressions of intention or statements concerning future events unless such were made with the present intent not to perform").  The Complaint reflects no such allegations.

The Response also relies upon paragraph 47 of the Complaint.  That paragraph says that "[t]he 'Benefits Payable' subsection of Section 1 of the Policy provides that '[a]fter any applicable deductible, the Health Expense Benefits payable under this Policy in a Policy year are paid at the Covered Percentage which applies to the type of Covered Medical Expense which is incurred." [Complaint ¶ 47]  But the Complaint does not allege that

---

surgery. [Complaint, Exhibit A at 3]  The "prescription medication" deductible is $1,000 per year, and applies to Hill's medication expenses. [Complaint, Exhibit A at 5]

Aetna failed to cover any expense at the appropriate Covered Percentage. The fraud claim relies solely on the assertion that Aetna deceived policyholders by stating it would waive the deductible for certain services. Paragraph 47 of the Complaint does not support that theory.

Aside from these three irrelevant citations, neither the Complaint nor the Response makes any attempt to set out the false statements on which Hill allegedly relied. The "business practices" allegation is pure speculation. Even if Defendants, or either of them, employed a practice of unfairly delaying action on pre-approvals, Hill would have to attack that practice on some basis other than an alleged misrepresentation in a policy.

### 2. Plaintiff Fails to Allege Reliance or Damages.

#### a. No allegation in the Complaint supports Hill's alleged reliance.

It is not at all "obvious," as Hill asserts, that he relied on any specific Policy provisions alleged to be fraudulent merely because he initially enrolled, and re-enrolled, in the plan. [See Doc. No. 8 at 11] To the contrary, the Response admits that: (1) Defendants issued the Policy on which he relies to Hill only *after* he purchased it, and (2) the University of Arizona required all students, including Hill, to purchase this insurance if they were not already insured, as a condition of their matriculation to the university. [Doc. No. 8 at 3] Hill never alleges that he (or any other student who might some day be part of the class) read or relied upon any of the language in the Policy at any time prior to visiting his attorneys' office, and certainly does not allege that he relied on Policy language before buying the Policy. Common experience and plausibility suggest that Hill never read the Policy before he purchased the Policy. Instead of alleging that Hill read the Policy language about which he complains, the Complaint merely suggests that the Policy language "permits the reasonable inference" that policyholders would have relied on it. [Complaint ¶ 95] Hill is entitled to no such inference here; he either read the policy language and relied upon it when deciding to purchase the Policy or he did not. Indeed, Hill notes that he received a copy of the Policy "[*a*]*s a member of the student health insurance plan,*" which means that

he did not read the Policy before he signed up and therefore did not rely upon it. [Doc. No. 8 at 3 (emphasis added)] The fact that he signed up for additional policy years after his first policy year does not mean that he ever read, understood, paid attention to, or relied on the language he now claims misled him.

As a matter of law, Mr. Hill could not have relied on the Policy documents if the university required him to enroll in the plan. Western Chance No. 2 Inc. v. KFC Corp., 734 F. Supp. 1529, 1540 (D. Ariz. 1990) (granting motion for summary judgment on fraud claim, where plaintiff did not take action based on alleged misrepresentations, but because it was bound to do so by contracts with defendant), aff'd in relevant part, rev'd in part on other grounds, 957 F.2d 1538 (9th Cir. 1992).

### b.      Hill alleges no causation or damages.

In the Response, Hill asserts that Aetna's fraud damaged him because he had to pay the "accident and sickness" deductible for the year in which his surgery was performed, even though he already paid that deductible for the year in which he requested coverage for the surgery. [Doc. No. 8 at 6] That misses the point. The alleged fraud is that Aetna supposedly agreed to waive the yearly deductible for certain services to cause policyholders to incur "potentially infinite" out-of-pocket costs. Hill does not allege that he used *any* of the subject services (which the Policy lists explicitly) or incurred *any* costs he should not have incurred because Aetna self-servingly waived deductibles. Rather, he argues that he should not have had to pay the 2010 deductible when he had his surgery because the Policy required Aetna to approve the surgery in 2009, a year in which he had already satisfied the deductible. In other words, he paid the 2010 deductible because Aetna allegedly *breached its contract*, not because Aetna committed fraud. Hill has not once explained how Aetna's allegedly fraudulent deductible waivers damaged him.

### B.      The Complaint Fails To State A Claim For Deceptive Advertising.

The Response fails to cite any case recognizing a private cause of action for "deceptive advertising." Instead, it appeals to the purpose of the law and argues that the

legislature did not *preclude* a private right of action in the text of the statute. [Doc. No. 8 at 6–7] That gets the analysis exactly backward. Lancaster v. Ariz. Bd. of Regents, 143 Ariz. 451, 453, 694 P.2d 281, 283 (Ct. App. 1984) ("Since the legislature is a separate branch of government Courts generally take a restrictive approach to implying private rights of action, presuming that had the legislature intended to create such a right it would have so specified").

The Response concedes that Hill bases his "advertising" claims on the Policy documents, not any advertisement for insurance. [Doc. No. 8 at 8] Under his logic, the documents (which he did not receive until after he signed up for the coverage) advertised themselves after the fact. This approach defies common sense, and would transform every breach of contract claim into a deceptive advertising claim.

The statute does not support this interpretation. The statute requires that there be an "advertisement, announcement, sales material or statement." A.R.S. § 20-444(A). The broad term "statement" must be read in light of the preceding list, which requires some kind of sales or advertising material, not just the subject contract itself. E.g., In re Julio L., 197 Ariz. 1, 3 P.3d 383, 386 (2000) (en banc) ("Under the ejusdem generis principle, unless contrary legislative intent is apparent, when a general term follows specific terms in a statute, the general term is interpreted as of the same class or type as the specific terms").

Hill relies on another phrase of the statute, which requires that the deceptive statement, to be actionable, must be made in a "newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, *or in any other way*." [Doc. No. 8 at 8 (quoting A.R.S. § 20-444(A)) (emphasis in Response)] Hill contends that the italicized language means that the actionable statement may be made "in any other way." But this clause refers not to the content of language found in a contract between parties, but only to the *media* in which the sales material must be communicated to be governed by the statute. The broad term "*in any other way*" does not abrogate the statute's requirement that there be sales material in the first place. That term

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

must also be read in light of the terms preceding it, and Hill has not alleged any false statement made in anything like a "newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station."

The Response contends further that Hill's deceptive advertising claims "are based on both the Policy and the Policy description brochures, which are provided to the public through the University of Arizona and the internet." [Doc. No. 8 at 8]  This statement is demonstrably untrue with regard to "brochures."  While the Complaint contains one reference to policy brochures [Complaint ¶ 17], it refers to no specific statement made in any brochure or other sales material and does not explain how any such statement was false or misleading, even in a general sense.  Moreover, the Complaint does not suggest that Hill ever looked at or relied upon any brochures, only that he received them.  To survive this motion, Hill, among other things, must point to some alleged specific statement in some specific brochure.

### C. The Statute Of Limitations Bars The Statutory Claims.

Hill contends that the statute of limitations does not bar his consumer fraud and deceptive advertising claims because he was not charged an allegedly-wrongful deductible until March 2010. [Doc. No. 8 at 9]  But the statutory claims are each based vaguely on "misrepresentations" in the Policy documents.  [Complaint ¶¶ 88, 91]  The only "misrepresentation" alleged is that Aetna agreed to waive the deductible for certain services for a self-serving purpose. [Complaint ¶ 51]  This allegation of deception has nothing to do with the deductible Mr. Hill paid for his surgery.  Rather, Mr. Hill alleges he should not have paid the March 2010 deductible because Aetna *breached the Policy* by initially denying his claim in March and June 2009.  [Complaint ¶¶ 42–44]  Thus, the conduct of which Hill complains occurred no later than June 2009—when Hill knew both about the Policy and the conduct that should have caused him to question Aetna's decision.  He knew, or should have known, that if he signed up for a new Policy for 2010, he would be expected

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

to pay a new deductible. The timing of his payment of the 2010 deductible has no bearing on when his statutory claims accrued.

Hill signed up for insurance in 2007, and Aetna initially denied his claims by June 2009. Hill does not explain why he could not have discovered his claims more than one year ago.

Finally, Hill relies on the adage that "the statute of limitations is not favored by the courts." [Doc. No. 8 at 8] That adage is inapplicable here. Where the statute of limitations on a statutory claim has run, it has run. Moreover, other claims by Hill are not subject to a statute, and if they survive the motion on their merits he will still have a remedy.

### D.     The Complaint Fails To State A Claim For Unjust Enrichment.

The Response misstates the law of unjust enrichment. Black-letter law in Arizona states that "if there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." E.g., Trustmark Ins. Co. v. Bank One Ariz. N.A., 48 P.3d 485 (Ct. App. 2002) (affirming judgment for defendant). The discussion should end there.

The Response suggests that the court in Trustmark relied on another decision, Brooks v. Valley Nat'l Bank, 133 Ariz. 169, 548 P.2d 1166 (1976), and then suggests that Brooks relied on yet another case, Ashton Co. Inc. v. Contractors & Engineers v. State, 9 Ariz. App. 564, 570, 454 P.2d 1004, 1010 (1969). The Response suggests further that Ashton did not hold that a contract per se eliminated relief under a theory of unjust enrichment. Rather, Hill argues, Ashton "summarily rejected the use of unjust enrichment in situations where there is an explicit contract which has been performed." [Doc. No. 8 at 11]

In fact, neither Brooks nor Ashton limited the black-letter law to situations in which the defendant had performed the contract. Trustmark itself is most instructive. There, Trustmark alleged that Bank One unjustly retained money it should have transferred pursuant to a wire transfer agreement. The court in Trustmark held that "[i]f Bank One, under whatever contractual documents might be found to be in force and effect, was

contractually obligated to make the wire transfers, then Trustmark has (or had) a breach of contract remedy," and affirmed the dismissal of the unjust enrichment claim. Id. at 492–93. The court did not analyze, and thus did not conclude, whether the contact had been performed; it just concluded that if a contract existed, then the unjust enrichment cause of action should be dismissed in favor of a breach of contract action.

The Response also cites Loiselle v. Cosas Mgmt. Group LLC, 224 Ariz 207, 211, 228 P.3d 943, 947 (Ct. App. 2010), for the proposition that "the court cited a series of cases from across the nation that stand for the proposition that, so long as the legal remedy is against the same person from whom relief in equity is sought, the existence of the remedy at law does not deprive equity of jurisdiction unless such remedy is clear, adequate and complete." That is not a fair or reasonable interpretation of Loiselle, which held that "to bring a successful unjust enrichment claim, a party must show the "absence of any remedy at law." Id. (citing Moussa v. Saba, 222 Ariz. 581, 218 P.3d 1038 (Ct. App. 2009)). It merely noted further that because the plaintiff there had no adequate remedy at law against *the party he sued in equity*, he could proceed with his equity claim.  Here, where Hill has adequate remedies at law, he may not proceed in equity.

### E.  Hill Fails To State A Claim For Breach Of Contract Or For Bad Faith.

The Response ignores the deficiencies in the breach of contract and bad faith claims raised by the motion to dismiss.  Hill never contends that Aetna lacked a reasonable basis for the payment delay or failed to conduct a reasonable investigation of his claim.  The unadorned fact that Aetna initially denied the claim, and then ultimately paid it, is not sufficient to state a bad faith claim because "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  An allegation of a delay in payment does not in itself establish a plausible claim.  Milhone v. Allstate Ins. Co., 289 F. Supp. 2d 1089, 1096 (D. Ariz. 2003) (bare assertion that an insurer intentionally delayed payment is a conclusion, not a fact.)

Hill asserts that the cases Defendants cited in the motion to dismiss are irrelevant because they were decided on summary judgment. That is wrong. A plaintiff cannot prevail on a claim for bad faith unless he establishes that the insurer "lacked a reasonable basis for denying the claim and . . . either knew about or recklessly disregarded that lack of a reasonable basis." Brown v. U.S. Fidelity & Guaranty Co., 194 Ariz. 85, 93, 977 P.2d 807, 815 (Ct. App. 1998) (affirming summary judgment for insurer). Hill has not pled anything to suggest that he can satisfy this element of his claim. He cannot go on a random fishing expedition to see if he can find some facts later to support his allegations, and thus he has not stated a claim for relief.

Finally, Mr. Hill makes no effort in his Response to explain what Aetna did wrong with respect to his prescription drug reimbursements. He cannot unlock the doors to potentially voluminous and burdensome discovery without giving the Court (and Defendants) some indication as to how he believes Aetna violated the Policy. The *conclusion* that Aetna's payments were not "timely" or "full" under the Policy is not sufficient.

### Relief Requested

For the foregoing reasons, Defendants respectfully request that the Court enter an order dismissing Mr. Hill's Complaint with prejudice.

DATED this 9th day of September, 2010.

                              BRYAN CAVE LLP

                      By    s/ Gregory B. Iannelli
                            Robert W. Shely
                            Gregory B. Iannelli
                            Two North Central Avenue, Suite 2200
                            Phoenix, Arizona 85004-4406

                            Daniel J. Quigley
                            QUIGLEY & WHITEHILL, P.L.C.
                            2730 East Broadway, Suite 160
                            Tucson, Arizona 85716-5384

                            Attorneys for Defendants Aetna Life
                            Insurance Company and Chickering Claims
                            Administrators Inc.

COPY of the foregoing electronically filed
using the CM/ECF System this 9th day of September, 2010.

s/ Amy Robinson

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000