BRYAN CAVE LLP, #00145700
Robert W. Shely (No. 014261)
Gregory B. Iannelli (No. 026549)
Shayna N. Fernandez (No. 027342)
Two N. Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
rwshely@bryancave.com
gregory.iannelli@bryancave.com
shayna.fernandez@bryancave.com

RUSING & LOPEZ, PLLC
Daniel J. Quigley (No. 011052)
6262 North Swan Road, Suite 200
Tucson, Arizona 85718
(520) 792-4800
(520) 529-4262
dquigley@rusingandlopez.com

Attorneys for Defendants Aetna Life Insurance Company and
Chickering Claims Administrators, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| SEAN STEVEN HILL, a single man,<br><br>  Plaintiff,<br><br>vs.<br><br>AETNA LIFE INSURANCE COMPANY, and CHICKERING CLAIMS ADMINISTRATORS, INC., foreign corporations,<br><br>  Defendants. | No. 4:10-CV-00451-DCB<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>(Hon. David C. Bury)<br><br>(ORAL ARGUMENT REQUESTED) |

Defendants Aetna Life Insurance Company ("Aetna") and Chickering Claims Administrators, Inc. ("Chickering") (now known as Aetna Student Health) (collectively "Defendants") move to dismiss Plaintiff Sean Steven Hill's Amended Class Action

681715.1

Complaint ("Amended Complaint") for failure to state a claim on which relief may be granted. The Amended Complaint vaguely asserts that Aetna failed to timely pay Mr. Hill's claims, supposedly breaching Mr. Hill's insurance contract and committing the tort of bad faith. Mr. Hill fails to state a claim for relief because he fails to allege any conduct that violated the terms of the policy, any facts demonstrating that he was damaged by Defendants' conduct, or any facts supporting the contention that Aetna lacked a reasonable basis for the alleged payment delay.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PLAINTIFF'S ALLEGATIONS.

Plaintiff Sean Steven Hill alleges that, from June 2007 until August 15, 2010, he was a member of a student health insurance plan issued by Aetna. [Amended Class Action Complaint ("AC") ¶¶ 7, 15] The Amended Complaint states that a Blanket Student Accident and Sickness Insurance Policy ("Policy") governed the relationship between Aetna and Mr. Hill. [AC ¶ 8] Mr. Hill alleges that Chickering "administered" claims under the Policy, but fails to describe further Chickering's role in the alleged transactions. [AC ¶ 7]

Mr. Hill alleges that his physician diagnosed him as suffering from a septal deviation on July 2, 2008. [AC ¶ 19] In August 2008, his physicians recommended that he undergo a septoplasty, and in April 2009 that he undergo a bilateral turbinoplasty. [AC ¶¶ 22, 23] Mr. Hill sought a predetermination of benefits under the Policy, and alleges that Aetna denied this request in March 2009. [AC ¶ 25] After two denied appeals, Mr. Hill sought review by an external agency in December 2009. [AC ¶ 26] On February 17, 2010, the agency recommended that the claim be approved, and Aetna approved the claim the following day. [AC ¶¶ 26, 27] Mr. Hill contends that Aetna breached an unspecified provision of the Policy by failing to treat his 2010 surgery as having been performed during the 2008–09 policy year, for purposes of applying the deductible, because Aetna supposedly should have approved the procedure earlier. [AC ¶¶ 46–48] Mr. Hill asserts, without any explanation or factual support, that Aetna delayed approval of his claim as part of a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"business practice of delaying covered expenses to have the services performed in a policy year in which the deductible had not yet been reached." [AC ¶ 48]

Mr. Hill also alleges that the Policy covered certain expenses for medications. [AC ¶ 30] According to the Amended Complaint, Mr. Hill incurred approximately $8,000 in expenses for medication between 2008 and 2010. [AC ¶ 36] He alleges that Aetna failed to "correctly calculate and timely reimburse" him for medication expenses under the Policy, but fails to identify what he believes he is still owed (if anything) or how Aetna's conduct failed to comply with the Policy. [AC ¶¶ 37, 38]

## II.   LEGAL STANDARD.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (reversing denial of motion to dismiss). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). A plaintiff cannot meet his burden simply by contending that he "might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 561. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. It is not sufficient if the complaint merely establishes a "sheer possibility" that the defendant has acted unlawfully. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). To determine whether a complaint states a plausible claim for relief, the court must rely on its "judicial experience and common sense." Id. at 1950. In considering a motion to dismiss, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice, are conclusory or mere

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

legal conclusions, or unwarranted deductions of fact or unreasonable inferences, or contradicted by documents referred to in the Complaint, or are internally inconsistent." Pesci v. IRS, 67 F. Supp. 2d 1189, 1191–92 (D. Nev. 1999), aff'd, 225 F.3d 663 (9th Cir. 2000) (citations omitted).

## III.   ARGUMENT.

### A.   Plaintiff Has Not Stated Any Claim Against Chickering.

The Court should dismiss Chickering from this action because Plaintiff has not pleaded that Chickering committed any of the acts that allegedly breached the contract or otherwise did anything wrong. Indeed, the Amended Complaint alleges that "*Aetna's* actions . . . constitute a material breach of the terms of the parties' contractual agreements" [AC ¶ 71 (emphasis added)] and that "*Aetna* breached the covenant of good faith and fair dealing." [AC ¶ 77 (emphasis added)] "Aetna" is a defined term referring to Aetna Life Insurance Company [AC at 1], not Chickering. Moreover, it is uncontested that Chickering is not a party to the contract whose express and implied terms Plaintiff claims were breached.

### B.   Plaintiff Fails To State A Claim Against Aetna For Breach Of Contract.

Count One of the Amended Complaint fails against Aetna, too, for a host of reasons, including failure to identify any action that breached any term of the Policy and failure to plead any damage, which is an element of a claim for breach of contract.

Although his claim is vague, it appears that Mr. Hill alleges that Aetna breached unspecified provisions of the Policy in two ways: (1) by failing to treat his 2010 surgery as having been performed during the 2008–2009 policy year, for purposes of applying the deductible, because Aetna supposedly should have approved the procedure earlier, and (2) by not "correctly calculat[ing] and timely reimburs[ing]" his prescription drug claims in

an unspecified fashion.[1] [AC ¶¶ 71, 30–49] Neither allegation supports a claim for breach of contract.

### 1. The Surgery Claim.

Mr. Hill has identified no provision of the Policy that required (or even allowed) Aetna to treat his March 2010 surgery as if it had occurred during the prior policy period, for purposes of calculating the deductible. To the contrary, Mr. Hill alleges that the Policy provides that the deductible is calculated based upon "the covered medical expenses that are paid by each covered person *during the policy year*." [AC ¶ 10] Mr. Hill concedes that his surgery was performed in March of 2010 (during the 2009–2010 policy year) and that he "had not yet met any of his 2009-10 policy year deductible" at that time. [AC ¶¶ 29, 43, 46] As a result, Aetna did not breach any provision of the Policy by applying the full deductible to the claim relating to the surgery.

In addition, Mr. Hill does not allege facts that would demonstrate that he was damaged by the way the deductible was applied, which failure is fatal to his claim. See ChartOne, Inc. v. Bernini, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Ct. App. 2004) (damage is an element of a breach of contract claim). Without any allegation as to Mr. Hill's other medical expenses in 2009–10, it is impossible to say whether his payment of a $337.95 deductible for his surgery caused him any injury. If Mr. Hill subsequently incurred enough other medical expenses during the 2009–2010 policy year to exceed the deductible amount, the surgical deductible at issue would have caused no extra expense to him. [See Doc. No. 13-1 at 6 ("Once the Individual or Family Out-of-Pocket Limit has been satisfied; Covered Medical Expenses will be payable at 100%; for the remainder of the Policy Year; up to any benefit maximum; that may apply")] Mr. Hill alleges nothing about his other

---

[1] Count One asserts only that Aetna's "actions set forth above constitute a material breach of the terms of the parties' contractual agreements." [AC ¶ 71] Mr. Hill does not explain which actions constitute a breach of which terms of which agreements.

2009–2010 insurance claims and reimbursements and, therefore, his claim must be dismissed for failure to allege facts supporting his conclusory allegation of injury.

### 2. The Prescription Drug Claims.

Mr. Hill similarly fails to allege any facts to support his claim that he was injured by the way that Aetna handled his prescription drug reimbursements. He does not allege that Aetna actually failed to pay him for prescription drug expenses, but rather only that Aetna "failed to correctly calculate and timely reimburse" him for unidentified expenditures. [AC ¶¶ 37, 38] Because Mr. Hill fails to plead any facts suggesting that he was damaged from the alleged delay, his claim fails.[2]

Mr. Hill also does not specify which provision of the Policy Aetna supposedly breached by paying in an "untimely" fashion, whatever he believes that to mean. This failure to identify a policy provision that was not followed is independently sufficient to require dismissal of this claim.

### C. Plaintiff Fails To State A Claim For Bad Faith Against Aetna.

Plaintiff's second claim is that Aetna breached an implied covenant in the insurance policy by "denying and delaying the timely payment of medical expenses" in bad faith. [AC ¶ 77] Count Two incorporates by reference the same factual allegations that are made in Count One, and Count Two, therefore, fails for lack of allegation of injury, as explained above. Although Mr. Hill contends that the supposed delay in approval for the surgery caused the deductible to be applied improperly and that his prescription drug expenses were not "timely" reimbursed, he has alleged no facts to support a claim that either of these things cost him any money, even if the allegations were true. Therefore, Count Two must be

---

[2] In its Motion to Dismiss the original Complaint, Aetna pointed out that the similar language of the first Complaint (alleging that Aetna "failed to fully and timely reimburse" him) was, at best, ambiguous. It was unclear whether Mr. Hill was suggesting that Aetna still owed him money or whether he claimed only to have been paid late. Aetna's motion urged Mr. Hill to re-plead, if he believed that Aetna still owed him money, with an unambiguous and specific allegation as to what he claimed to be owed. He has now re-pleaded, but has failed once again to include an unambiguous allegation that he is still owed money (much less how much is supposedly owed or when it was requested).

dismissed, as injury is an essential element of a bad faith claim. Rawlings v. Apodaca, 151 Ariz. 149, 159–60, 726 P.2d 565, 575–76 (1986) (purpose of tort of bad faith is to compensate insured for damages not recoverable in contract action).

In addition, Count Two fails because Mr. Hill does not plead facts that would show that Aetna "lacked a reasonable basis for denying the claim and . . . either knew about or recklessly disregarded that lack of a reasonable basis." Brown v. U.S. Fidelity & Guaranty Co., 194 Ariz. 85, 93, 977 P.2d 807, 815 (Ct. App. 1998) (affirming summary judgment for insurer on bad faith claim). "If the insurer conducted a reasonable investigation, it can safely and in good faith deny claims that are fairly debatable." Id. The bad faith claim fails against all Defendants for lack of pleading that Defendants knew or recklessly disregarded that they lacked a reasonable basis either to deny or to delay paying Mr. Hill's claims.

### 1. The Surgery Claim.

Mr. Hill alleges that Aetna approved his claim for the septoplasty and turbinoplasty approximately 11 months later than it should have, which harmed him by affecting the way the deductible was applied. But he does not allege any facts suggesting that Aetna had no reasonable basis for the supposed delay, did not conduct a reasonable investigation, or otherwise did anything wrong. He hinges the claim, rather, on his conclusory assertion, unsupported by any facts, that Aetna has a business practice of delaying claim payment until a year in which the applicable deductible has not been met. This Court has rejected similar conclusory assertions of intentional payment delay. See Milhone v. Allstate Ins. Co., 289 F. Supp. 2d 1089, 1096 (D. Ariz. 2003) (characterizing allegations of lengthy and unreasonable delay, including oppressive use of litigation to low-ball claims and consciously delaying the payment of admittedly legitimate claims, as "conclusion[s], not a fact"). The Milhone decision indicates how high the bar is – and how Mr. Hill fails to clear the bar.

Mr. Hill also points out that his doctors disagreed with Aetna's decision to initially deny coverage for the surgeries. [AC ¶ 49] That Mr. Hill's doctors favored their own

medical decisions over Aetna's does not plausibly suggest that Aetna's decisions were *unreasonable* or otherwise made in bad faith.  Iqbal, 129 S. Ct. at 1949 ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference *that the defendant is liable for the misconduct alleged*") (emphasis added).  Further, in signing up for insurance Mr. Hill agreed that "[t]he fact that any particular physician may prescribe, order, recommend, or approve a service or supply does not, of itself, make the service or supply medically necessary."  [Doc. No. 13-1 at 13]  He cannot now assert that Aetna's decision was wrong because his doctors disagreed with it.[3]

### 2. The Prescription Drug Claims.

With respect to his claim for reimbursements for prescription drug expenses, Mr. Hill fails even to allege what expenses he submitted, what Defendants paid and when they paid it, or what he believes Defendants should have done instead.  He offers no reason to believe that Defendants lacked a reasonable basis to pay his claims at the time and in the amount they did.  He simply paraphrases the terms of the Policy and contends that Defendants failed to honor those terms.  [AC ¶¶ 37, 38]  That is not sufficient to state a claim for bad faith.  Brown, 194 Ariz. at 93.

### 3. The Allegations That Defendants Lacked A Reasonable Basis To Deny Or Delay Payment Of Plaintiff's Claims Are Conclusory.

Defendants apprised Mr. Hill of these deficiencies in their first Motion to Dismiss.  With respect to the prescription drug claim, all he has done to correct the deficiencies is to allege in conclusory fashion that "Defendant did not have a reasonable basis for improperly

---

[3] Further, Mr. Hill alleges that Aetna delayed paying his claim until a later policy year in which Mr. Hill had not fully satisfied his deductible, to avoid having to reimburse Mr. Hill the full cost of the surgery.  According to the Amended Complaint, Aetna saved $337.95 by employing this speculative scheme—but had to incur the cost of two internal reviews, one external review, and the possibility of litigation to save that meager sum.  To determine whether a complaint states a plausible claim for relief, the court must rely on its "judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950.  It defies common sense that Aetna would employ such a costly, risky scheme to save less than $400.

calculating and reimbursing Plaintiff's prescription medical expenses and Defendant either knew or recklessly disregarded the fact that it did not have a reasonable basis for improperly calculating and reimbursing those claims." [AC ¶ 39] Similarly, with respect to the surgery claim, all he says is that "Defendant did not have a reasonable basis for denying Plaintiff's required medical procedures at any of the appellate levels and Defendant either knew or recklessly disregarded the fact that it did not have a reasonable basis for denying the claim." [AC ¶ 49] This is exactly the sort of *ipse dixit* pleading <u>Twombly</u> and <u>Iqbal</u> forbid. <u>Twombly</u>, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

## Relief Requested

For the foregoing reasons, Defendants respectfully request that the Court enter an order dismissing Mr. Hill's Amended Complaint with prejudice.

DATED this 4th day of January, 2011.

>
> BRYAN CAVE LLP
>
>
> By <u>s/ Gregory B. Iannelli</u>
>    Robert W. Shely
>    Gregory B. Iannelli
>    Two North Central Avenue, Suite 2200
>    Phoenix, Arizona 85004-4406
>
>    Daniel J. Quigley
>    RUSING & LOPEZ, PLLC
>    6262 North Swan Road, Suite 200
>    Tucson, Arizona 85718
>
>    Attorneys for Defendants Aetna Life
>    Insurance Company and Chickering Claims
>    Administrators, Inc.

1  COPY of the foregoing electronically
2  filed using the CM/ECF System this
   4th day of January, 2011.
3
4  s/ Gregory B. Iannelli
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

681715.1                                10